IN THE SUPREME COURT OF THE STATE OF ARIZONA
En Banc

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, a foreign corporation, | ) ) ) | Arizona Supreme Court No. CV-01-0262-PR |
| Petitioner, | ) ) ) | Court of Appeals Division One No. 1 CA-SA 01-0124 |
| v. | ) ) | |
| THE HONORABLE EDWARD O. BURKE, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, | ) ) ) ) | Maricopa County Superior Court No. CV 99-18712 |
| Respondent Judge, | ) ) | |
| GENERAL STAR INDEMNITY COMPANY, a foreign corporation, GENERAL STAR MANAGEMENT COMPANY, a foreign corporation, | ) ) ) ) | **O P I N I O N** |
| Real Parties in Interest. | ) ) ) | |

Special Action from the Superior Court in Maricopa County
The Honorable Edward O. Burke, Judge
RELIEF GRANTED

Law Offices of Neil Vincent Wake                                          Phoenix
        By:    Neil Vincent Wake
               Linda D. Skon
        - and -
Sanders & Parks, P.C.                                                      Phoenix
        By:    Garrick L. Gallagher
               Steven D. Leach
               Eileen Sigmund
Attorneys for Twin City Fire Insurance Company

Jennings, Strouss & Salmon, P.L.C.                                        Phoenix
        By:    John J. Egbert
               W. Michael Flood
               David B. Earl
Attorneys for General Star Indemnity Company
and General Star Management Company

FELDMAN, Justice (retired).

**¶1**        This matter arises from a bad faith action brought by an excess liability insurer against the primary carrier for the latter's failure to settle a wrongful death case within the primary carrier's policy limit. Over objections as to the attorney-client privilege, the trial judge granted a motion to compel the excess insurer to produce certain documents and respond to interrogatories pertaining to monitoring and evaluation of the wrongful death claim by its lawyers. The court of appeals declined to accept jurisdiction of the excess carrier's petition for special action relief, and we granted its petition for review to clarify the application of the principles determining whether a party has impliedly waived the attorney-client privilege.

**JURISDICTION**

**¶2**        We have jurisdiction pursuant to article VI, § 5(3) of the Arizona Constitution and A.R.S. § 12-120.24. *See also* Rule 8(b), Ariz.R.P.Spec.Act., and Rule 23, Ariz.R.Civ.App.P.

**¶3**        Special action review of an order compelling discovery over the objection of a party asserting a privilege is appropriate because there is no equally plain, speedy, or adequate remedy by appeal. *See, e.g., Arizona Dep't of Econ. Sec. v. O'Neil*, 183 Ariz. 196, 901 P.2d 1226 (App. 1995); *Blazek v. Superior Court*, 177 Ariz. 535, 869 P.2d 509 (App. 1994); *see also* Rules 1 and 3, Ariz.R.P.Spec.Act. Further, this case presents a question of law with statewide significance, which further supports our acceptance of jurisdiction of this special action. *See City of Tucson v. Superior Court*, 167 Ariz. 513, 513, 809 P.2d 428, 428 (1991) (finding special action jurisdiction properly accepted when "issue presented is a pure issue of law that is of statewide significance").

## FACTS AND PROCEDURAL BACKGROUND

¶4        The parents of an eleven-year-old boy filed a wrongful death action against the City of Scottsdale; Southwest Gas and its subcontractor, Arizona Pipeline; the intoxicated driver of a vehicle that struck and killed the child as he was walking with his father; and the establishment at which the driver had been drinking. The parents alleged that Arizona Pipeline negligently had barricaded a construction zone on a street improvement project, forcing pedestrians such as the decedent and his father to walk in the roadway. General Star Management Co. was Arizona Pipeline's primary liability insurer and provided it with $1 million coverage. Twin City Fire provided Arizona Pipeline with excess liability coverage of $9 million.[1] General Star's primary policy provided that it had the exclusive right and duty to defend, control, and settle all claims or lawsuits brought against Arizona Pipeline, and it assumed the defense of the wrongful death action.

¶5        Twin City hired its own counsel to monitor the defense and evaluate the case. At least twice during pretrial settlement negotiations, the parents offered to settle their claims against Arizona Pipeline for less than General Star's $1 million limit, but General Star refused. Twin City sent General Star two letters in this regard, acknowledging that it was aware the decedent's parents had been willing to settle for less than the limit of General Star's policy but that General Star had refused. Twin City demanded that General Star settle the claims.

¶6        After settling with the driver of the vehicle as well as other defendants, the parents proceeded to trial against Arizona Pipeline. The jury found the parents had sustained $8 million in damages and allocated twenty-five percent of the fault to the driver, who had been designated a non-party at fault, and the remaining seventy-five percent to Arizona Pipeline. The trial judge therefore entered a $6 million judgment against Arizona Pipeline.

¶7        Arizona Pipeline subsequently settled the parents' wrongful death claims for a total of $5.4 million. Twin City demanded that General Star pay the entire amount, but it refused, instead

---

[1] Both policies provided coverage to Southwest Gas as an additional insured. Hereafter, Arizona Pipeline and Southwest Gas are collectively referred to as Arizona Pipeline.

paying the policy limit of $1 million. Twin City paid the remaining $4.4 million and then filed this bad faith action against General Star based on its refusal to settle the parents' claims within policy limits.

¶8 General Star served Twin City with interrogatories and requests for production of documents seeking Twin City's files pertaining to the wrongful death action, including any communications between Twin City and counsel it had retained to evaluate the wrongful death action and monitor General Star's defense of the case. Twin City objected to General Star's discovery requests, claiming the information it had received from counsel was not discoverable because it was either irrelevant or protected by the attorney-client privilege. General Star filed a motion to compel Twin City to produce the requested information. The judge granted the motion, finding, *inter alia*, that the information sought "may be evidence that will establish or negate bad faith on the part of General Star." He concluded that the material was discoverable based on our decision in *Clearwater v. State Farm Mutual Automobile Insurance Co.*, 164 Ariz. 256, 792 P.2d 719 (1990). Making no factual findings, the judge further stated he did "not believe that the attorney/client privilege applies to the motion to compel under" *State Farm Mutual Automobile Insurance Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000) (hereinafter referred to as *Lee*).

¶9 Twin City contends *Lee* does not support the conclusion that an excess insurer waives its attorney-client privilege simply by bringing an action against a primary insurer for bad faith when that action is based solely on the primary carrier's conduct. We agree and conclude that, based on the nature of Twin City's action against General Star and the principles we set forth in *Lee*, Twin City has not waived the attorney-client privilege.

## STANDARD OF REVIEW

¶10 Generally, a trial judge's ruling on a discovery-related issue will not be disturbed absent an abuse of discretion. *Blazek*, 177 Ariz. at 537, 869 P.2d at 511. Similarly, in reviewing a trial judge's

4

order within the context of a special action, ordinarily we must find the judge abused his discretion or exceeded his jurisdiction or legal authority before we may grant relief. Rule 3, Ariz.R.P.Spec.Act. We defer to the judge with respect to any factual findings explicitly or implicitly made, affirming them so long as they are supported by reasonable evidence. *See Horton v. Mitchell*, 200 Ariz. 523, 526 ¶ 13, 29 P.3d 870, 873 ¶ 13 (App. 2001). But when a judge commits an "error of law . . . in the process of reaching [a] discretionary conclusion," he may be regarded as having abused his discretion. *Grant v. Arizona Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982); *see also State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983). Whether a privilege exists is largely a question of law, which we therefore review *de novo*. *Blazek*, 177 Ariz. at 537, 869 P.2d at 511. Likewise, "[w]hether a party has waived the attorney-client privilege is a mixed question of law and fact which we review de novo." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). So, too, is the question whether the trial judge properly applied our decision in *Lee* and whether his implicit conclusion that Twin City waived its attorney-client privilege is correct. *See Brink Elec. Constr. Co. v. Arizona Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App. 1995).

## DISCUSSION

¶11        The trial judge concluded the attorney-client privilege did not apply to the information General Star sought. But the motion to compel was aimed at forcing disclosure of communications between Twin City and its counsel about a matter for which Twin City sought legal advice. Clearly the privilege applies. *See* A.R.S. § 12-2234. Given the record and the judge's reference to *Lee*, the judge apparently believed that, in light of our holding in *Lee*, Twin City had waived the privilege. Because the record indicates there was no express waiver, the judge must have found an implied waiver, and we examine his ruling in that context. To determine the propriety of the judge's implicit finding that Twin City waived the attorney-client privilege, we must first review our decision in *Lee*.

5

**¶12**      Like the present case, *Lee* was a special action arising out of a bad faith claim. There, we established the standard for deciding whether the attorney-client "privilege has been waived in cases in which the mental state of a litigant is at issue." 199 Ariz. at 54 ¶1, 13 P.3d at 1171 ¶1. At issue in *Lee* was whether, given the state of the law at the time, State Farm acted in bad faith when it refused to pay policyholders' underinsured and uninsured motorist claims based on State Farm's interpretation of the "anti-stacking" provisions of its policies. In their class action against State Farm, the policyholders asserted there was no legal justification for State Farm's interpretation and resultant denial of their claims. The policyholders sought discovery of communications between State Farm and its counsel relating to State Farm's rejection of the claims. State Farm conceded it had obtained the advice of counsel in deciding whether to pay the policyholders' claims but denied that it would rely on that advice as a defense to the allegations of bad faith denial of the claims. Rather, it described its defense as merely an argument that its agents had acted reasonably in denying the claims because, given their knowledge of the existing law, they had objectively and subjectively concluded there was no legal obligation. *Id.* at 57 ¶ 13, 13 P.3d at 1174 ¶ 13. The trial judge "concluded that State Farm impliedly waived the privilege when it put at issue the subjective legal knowledge of its managers after they sought and received legal advice." *Id.* at 56 ¶ 7, 13 P.3d at 1173 ¶ 7 (emphasis deleted).

**¶13**      We held that the trial judge had not committed legal error or abused his discretion by making these findings. We approved of the following test for determining when a party impliedly has waived the attorney-client privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 56 ¶ 10, 13 P.3d at 1173 ¶10 (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). We also adopted the test set forth in RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 80(1), which provides, in relevant part, that:

6

> The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that:
>
> (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct.

**¶14** Explaining further the application of these tests, we expressly rejected the notion "that the mere filing of a bad faith action, the denial of bad faith, or the affirmative claim of good faith may be found to constitute an implied waiver of the privilege." *Lee*, 199 Ariz. at 62 ¶28, 13 P.3d at 1179 ¶28. We stated that a party does not waive the attorney-client privilege

> unless it has asserted some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes the information received from counsel. In that situation, the party claiming the privilege has interjected the issue of advice of counsel into the litigation to the extent that recognition of the privilege would deny the opposing party access to proof without which it would be impossible for the factfinder to fairly determine the very issue raised by that party. We believe such a point is reached when, as in the present case, the party asserting the privilege claims its conduct was proper and permitted by law and based in whole or in part on its evaluation of the state of the law. In that situation, the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct. Add to that the fact that the truth cannot be found absent exploration of that issue, and the conditions of RESTATEMENT § 80 are met.

*Id.*

**¶15** In the present case, the determinative questions are quite similar to those in *Lee*: Would the application of the privilege deny General Star access to information vital to its defense? Would recognizing the privilege make it impossible for the factfinder to fairly determine the very issue raised by General Star? To resolve these questions, we apply the principles established in *Lee*.

## RESOLUTION

**¶16** Twin City insists that the mental state and conduct of its agents and counsel are not the issue in this bad faith action and that at no point has it interjected its own privileged communications

7

into this suit. It contends the trial judge's order is the result of his misapplication of the principles we articulated in *Lee*. We agree.

¶17	The very nature of this bad faith action militates against a finding that Twin City's mental state or conduct was at issue. An excess insurer's right to bring an action for bad faith refusal to settle is premised on the notion that the "excess insurer should not have to pay a judgment if the primary insurer caused the excess judgment by a bad faith failure to settle within primary limits." *Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 164 Ariz. 286, 291, 792 P.2d 749, 754 (1990). The "excess carrier is subrogated to the rights of the insured and has a cause of action against the primary insurer for bad faith failure to settle within policy limits." *Id*. To prove a bad faith claim based on the failure to settle, a plaintiff must demonstrate "that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238 ¶ 22, 995 P.2d 276, 280 ¶ 22 (2000). An insurer may defend those claims that can be characterized as "fairly debatable," but in doing so, it "must exercise reasonable care and good faith." *Id*. at 237 ¶ 19, 995 P.2d at 279 ¶ 19. An insurer owes its insured "'some duties of a fiduciary nature,' including '[e]qual consideration, fairness and honesty.'" *Id*. at ¶ 20 (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986)).

¶18	Thus, until the primary carrier's policy limit is exhausted, the excess carrier's conduct during the course of an underlying action against the insured is generally irrelevant to a determination of the core issue of the primary carrier's good faith, absent a policy provision to the contrary. *Continental Cas. Co. v. Royal Ins. Co.*, 268 Cal.Rptr. 193, 197 (1990). Until a primary insurer offers its policy limit, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all. *Id.*; *see also Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000). The excess insurer's conduct may be relevant to the core issue only to the extent that there are allegations it interfered with the settlement of the claim against the insured or misinformed the insured. *See Continental Cas.*, 268 Cal.Rptr. at 196-97. General Star has made no such allegations.

8

**¶19**      Obviously, there are significant differences in the legal posture of *Lee* and the present case. In *Lee*, plaintiffs contended State Farm waived the attorney-client privilege when it argued that, after consulting its lawyers, it reached in good faith an objective and subjective conclusion that plaintiffs' claims were legally unfounded. But the present case essentially presents the proverbial "flip side" of *Lee*. Twin City's good faith conduct is not the relevant legal issue. The question, rather, is whether General Star acted in good faith. The subjective views and evaluations of Twin City's claims agents do not shed light on the question of General Star's good faith. Confidential communications between Twin City and its counsel therefore do not tell us whether General Star refused, in good faith, to settle the wrongful death claims within its policy limit. The issue in the present case is whether General Star made a good faith evaluation and acted properly in rejecting the settlement offer.

**¶20**      We therefore find no support, either factually or legally, for the idea that Twin City affirmatively put counsel's views in issue when it filed a bad faith action against General Star. Unlike the situation in *Lee*, General Star does not claim its refusal to settle was based on advice from Twin City's counsel. Thus, "recognition of the privilege would [not] deny [General Star] access to proof without which it would be impossible for the factfinder to fairly determine the very issue raised by [Twin City]." *Lee*, 199 Ariz. at 62 ¶ 28, 13 P.2d at 1179 ¶ 28. As Twin City correctly points out, General Star does not require the information Twin City obtained from its counsel regarding the wrongful death action to defend against Twin City's allegations that it acted in bad faith in refusing to settle the death action within the policy limit.

**¶21**      Nor has General Star otherwise established that Twin City affirmatively injected any advice it received from its counsel into the bad faith action. In its motion to compel, General Star argued that it was entitled to any information relating to counsel's evaluation of the claim because it could lead to the discovery of admissible evidence to support General Star's evaluation of the underlying litigation. It contended that if evaluations by Twin City's counsel were similar to its own, it would tend to establish that General Star acted reasonably under the circumstances. If, on the other hand, pre-verdict evaluations and communications by Twin City's counsel demonstrated that Twin City believed

9

General Star was underestimating the likelihood of an adverse jury verdict, it could show that Twin City had unclean hands. The trial judge apparently agreed, finding that the information requested could negate a finding of bad faith.

¶22 We recognize, of course, both the relevance and pragmatic importance of the information sought by General Star. If, for example, Twin City's own counsel evaluated the case at a figure below the limit of General Star's policy, General Star could use that as evidence to show it acted reasonably. Pragmatically also, such information would have great value to General Star for, in the view of jurors, it would serve to impeach the credibility of Twin Star's theory of the case. But neither this type of relevance nor pragmatic importance alone will support a finding that the attorney-client privilege has been waived under *Lee*. If so, the privilege would have little meaning. General Star has easy access to expert opinion on claim evaluation. The evaluation of Twin City's counsel is not *vital* to General Star's defense. Nor would denial of access to evaluation by Twin City's counsel make it impossible for the jury to fairly determine the propriety of General Star's conduct.[2]

¶23 *Lee* held that "[t]he waiver exists only when the privilege holder raises and defends on the theory that its mental state was based on its evaluation of the law and the facts show that evaluation included and was informed by advice from [its] legal counsel." *Id*. at 65 ¶ 33 n.7, 13 P.3d at 1182 ¶ 33 n.7. Such a theory injects the privileged information as an issue in the case and under some circumstances makes it vital that the other party have access to the information to pursue or defend a claim. Twin City has done nothing to make counsel's advice "'relevant to the legal significance of [General Star's] conduct.'" *Id*. at 64 ¶ 31, 13 P.3d at 1181 ¶ 31 (quoting RESTATEMENT § 80(1)(a)). On this record, we conclude that Twin City has not impliedly waived the attorney-client privilege.

---

[2] Nor do Twin City's two demand letters show that Twin City affirmatively injected the advice of counsel as a material issue to its claim of bad faith against General Star or that it thereby impliedly waived its attorney-client privilege. Both letters acknowledge that Twin City's counsel had met with counsel for General Star, that Twin City understood there had been opportunities to settle the wrongful death action for less than the policy limits, that General Star had not settled, and that Twin City demanded it do so. Nothing in the letters establishes that Twin City impliedly waived its attorney-client privilege as contemplated by *Hearn*, 68 F.R.D. 574, and RESTATEMENT § 80.

10

**CONCLUSION**

¶**24**        Thus, we hold that the trial judge erred in applying *Lee* to this case and concluding that Twin City waived its attorney-client privilege. Consequently, we grant relief and vacate that portion of the judge's order granting the motion to compel with respect to matters that are protected by the attorney-client privilege. We direct that the case proceed in a manner consistent with this opinion.

_____
STANLEY G. FELDMAN, Justice (retired)


CONCURRING:


_____
RUTH V. McGREGOR, Vice Chief Justice


_____
WILLIAM E. DRUKE, Judge


_____
KENNETH LEE, Judge


_____
THOMAS A. ZLAKET, Justice (retired)


Due to vacancies on the court, pursuant to article VI, § 3 of the Arizona Constitution, the Honorable William E. Druke, Judge of the Arizona Court of Appeals, and the Honorable Kenneth Lee, Judge of the Superior Court in Pima County, were designated to sit on this case.