IN THE

# ARIZONA COURT OF APPEALS
## DIVISION TWO

GARY ABEYTA,
*Petitioner,*

*v.*

HON. BRADLEY M. SOOS,
JUDGE PRO TEMPORE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PINAL,
*Respondent,*

and

SIERRA TUCSON, INC., AN ARIZONA CORPORATION; AND
HEIDI SONNTAG,

*Real Parties in Interest.*

No. 2 CA-SA 2013-0078
Filed February 19, 2014

Special Action Proceeding from the Superior Court in Pinal County
No. CV201301415

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Kelly/Warner, PLLC, Scottsdale
By Garrick A. McFadden
*Counsel for Petitioner*

Renaud Cook Drury Mesaros, PA, Phoenix
By Charles S. Hover III
*Counsel for Real Party in Interest Sierra Tucson*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By James K. Kloss and Bruce C. Smith
*Counsel for Real Party in Interest Sonntag*

---

**OPINION**

Judge Miller authored the decision of the Court, in which Presiding Judge Vásquez and Chief Judge Howard concurred.

---

M I L L E R, Judge:

¶1     In this special action, petitioner Gary Abeyta challenges the order of the respondent judge (trial judge) denying his motion for a protective order, in which he asked that defendants Sierra Tucson, Inc. and Heidi Sonntag be prohibited from questioning him, a non-party fact witness, about his mental health treatment and attendant records that had been disclosed without his consent. "Special action review of an order compelling discovery over the objection of a party asserting a privilege is appropriate because there is no equally plain, speedy, or adequate remedy by appeal." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 3, 63 P.3d 282, 283 (2003); *see also* Ariz. R. P. Spec. Actions 1(a) (special-action jurisdiction warranted when no equally plain, speedy, or adequate remedy by appeal). It also is appropriate to accept special-action jurisdiction when, as here, the challenged ruling ultimately involves pure issues of law that require no further fact-finding. *See Salvation Army v. Bryson*, 229 Ariz. 204, ¶ 2, 273 P.3d 656 (App. 2012). We therefore accept jurisdiction of this special action and, for the reasons stated below, grant relief.

## Factual and Procedural Background

¶2     "When reviewing the superior court's denial of relief in a special action, we view the facts in the light most favorable to

sustaining the court's ruling." *Hornbeck v. Lusk*, 217 Ariz. 581, ¶ 2, 177 P.3d 323, 324 (App. 2008). In April 2011, Abeyta began counseling with Sonntag, a licensed clinical social worker. He and Paul Bruno, the plaintiff in the underlying civil action, were engaged in a long-time domestic relationship and, on Sonntag's advice, Bruno eventually joined Abeyta in counseling.

¶3            Sonntag advised the couple that all communications with her "would be freely communicated to the other person," and in the course of the counseling she "kept one, single chart." She provided Abeyta and Bruno an informed consent for treatment form, which stated that in "relational counseling, all involved parties need to be present during counseling sessions. Counselor does *not* switch from individual counseling to relational counseling or visa versa." During the course of counseling, Bruno and Abeyta exchanged electronic mail messages with Sonntag about their treatment.

¶4            In March 2012, Bruno checked into Sierra Tucson for in-patient treatment based on Sonntag's recommendation. While there, Bruno injured his back after a staff member required him to move his suitcase. Bruno brought an action against Sierra Tucson and Sonntag, alleging breach of contract, breach of the covenant of good faith and fair dealing, negligence, intentional misrepresentation, and infliction of emotional distress, all in relation to his stay and injury at Sierra Tucson.

¶5            In May 2013, Sonntag's attorney disclosed "a copy of the Bruno/Abeyta chart from their joint counseling with [her]." Sonntag also noticed Abeyta's deposition pursuant to subpoena. Asserting privilege, Abeyta objected to the disclosure of his records and sought a protective order against being required to submit to questioning about those records and his treatment during the deposition.

¶6            The trial judge denied the motion, finding Abeyta and Bruno had "engaged in joint counseling" with Sonntag and she had advised them "that all communications would be freely disclosed to the other person" and they had agreed. The judge noted that Sonntag maintained one chart for the joint counseling, which

Sonntag's counsel intended to use in deposing Abeyta. Citing *Hahman v. Hahman*, 129 Ariz. 101, 628 P.2d 984 (App. 1981), the judge concluded that because Abeyta had agreed to joint counseling and had "engaged in many written detailed communications with [Sonntag] regarding her methods of treatment of [Bruno]," Abeyta had waived any privilege.

**Discussion**

¶7 In his petition for special action relief, Abeyta contends the trial judge abused his discretion in denying Abeyta's motion for a protective order because he incorrectly applied this court's decision in *Hahman* and the relevant law of privilege. In a special action, we review the trial judge's ruling for an abuse of discretion, Rule 3, Ariz. R. P. Spec. Actions, and such an abuse encompasses an error of law, *Twin City Fire*, 204 Ariz. 251, ¶ 10, 63 P.3d at 284-85. The existence of a privilege is a legal question, and whether a privilege has been waived is a mixed question of law and fact; both are subject to our de novo review. *Id.*

¶8 Pursuant to A.R.S. § 32-3283(A), the confidential relationship between a licensed clinical social worker, such as Sonntag, and a patient "is the same as between an attorney and a client." And, § 32-3283(A) provides that "a licensee shall not voluntarily or involuntarily divulge information that is received by reason of the confidential nature of the" counseling relationship "[u]nless a client waives this privilege in writing or in court testimony." This privilege "prohibit[s] not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege." *Bain v. Superior Court*, 148 Ariz. 331, 333, 714 P.2d 824, 826 (1986) (discussing scope of psychologist-patient privilege, which, like behavioral health professional-patient privilege is equivalent to attorney-client privilege).

¶9 Abeyta asserts he did not waive his privilege "either in writing or in court testimony," but rather has "steadfastly asserted the privilege." Nothing in the record before us suggests Abeyta testified about his treatment with Sonntag. As to a written waiver, Sonntag relies on the informed consent for treatment form she

provided to Abeyta. But, even if Abeyta had signed that form,[1] the form itself did not address the privilege between Sonntag and Abeyta, except to inform him that in counseling with more than one client, all parties need to be present.[2]

¶10     Under Arizona Administrative Code R4-6-1105(A), promulgated pursuant to A.R.S. § 32-3253(A)(1), "[a] licensee shall only release or disclose client records of any information regarding a client" "[i]n accordance with applicable federal or state law" or "[w]ith written authorization from the client." Such a written authorization must include, inter alia, the name of the disclosing person, the purpose of the disclosure, the person or entity receiving the information, and a description of the record or information. Ariz. Admin. Code R4-6-1105(C). Likewise, under federal law, the Health Insurance Portability and Accountability Act's (HIPAA) privacy rule requires a detailed authorization for uses and disclosures of protected health information. *See* 45 C.F.R. § 164.508(c); *see also* HIPAA Frequent Questions: Authorization Use & Disclosure, http://www.hhs.gov/hipaafaq/use/264.html (last visited Jan. 17, 2014) (distinguishing between "consent for uses and disclosures of protected health information for treatment" and "'authorization'" required "for uses and disclosures of protected health information not otherwise allowed by privacy rule). The consent for treatment on which Sonntag relies does not meet the requirements for a written consent for disclosure under the above rules. And we cannot say that, given its limited scope, which suggested, at most, that the client waived the privilege between those involved in joint counseling, it was sufficient to otherwise waive Abeyta's privilege.

¶11     Beyond a written authorization, however, in the context of the psychologist-patient privilege, our supreme court has determined that a patient may also waive the privilege by

---

[1] The form bears one signature, which is not legible.

[2] The informed consent form also referred to a "*HIPAA NOTICE OF PRIVACY PRACTICES*," but that document is not part of the record.

"pursu[ing] a course of conduct inconsistent with observance of the privilege." *Bain*, 148 Ariz. at 334, 714 P.2d at 827. The court reached this conclusion based on its decision in *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 158, 382 P.2d 560, 568 (1963), *quoting* 8 Wigmore on Evidence § 2388, at 855 (McNaughton Rev. 1961), in which it had ruled that a waiver occurs when a privileged claimant's conduct creates a situation in which "'it would be unfair and inconsistent to permit the retention of the privilege.'" In other words, the privilege cannot be used as "'both a sword and a shield.'" *Id.*, *quoting* 8 Wigmore, *supra*, § 2388, at 855.

**¶12** Sonntag argues that this is what Abeyta seeks to do. She maintains that because Bruno "placed his mental health at issue by suing" her, she is entitled to question Abeyta about various aspects of their counseling. And, she contends, Abeyta cannot object to her use of his records when Bruno has given at least some of the records to a third party and has indicated Abeyta will testify on his behalf about "the role . . . Sonntag played in keeping him at Sierra Tucson" and his "loss of enjoyment of life." Likewise, in his ruling, the trial judge also noted Bruno's claim of a "loss of enjoyment of life" as a factor in deciding Abeyta had waived his privilege.

**¶13** Bruno's privilege waiver, however, does not similarly waive Abeyta's privilege. Under the administrative rules promulgated pursuant to A.R.S. § 32-3253(A)(1),

> Where a licensee provides behavioral health services to more than one person in a family, each family member who is legally competent to consent to authorize release of client records shall sign a written authorization to release client records regarding that family member or any information obtained from that family member. Without such an authorization, a licensee shall not disclose that family member's client record or any information obtained from that family member.

Ariz. Admin. Code R4-6-1105(E).[3]  Contrary to Sonntag's assertion that "[t]here is no Arizona statute or regulation on joint versus individual counseling and the chart," Arizona Administrative Code R4-6-1103(A) requires that a licensee "ensure that a client record is maintained for *each* client."  (Emphasis added).  The administrative rules in this area, therefore, contemplate that information among participants in a joint-counseling situation will not remain confidential, but they do require that confidentiality be maintained as against third parties.  Thus, the waiver by one participant of the privilege is not sufficient to waive the privilege as to "information obtained from" all participants.  Ariz. Admin. Code R4-6-1105(E).

¶14        In reaching a contrary conclusion, the trial judge relied on this court's decision in *Hahman*, as does Sonntag.  In *Hahman*, we determined that when two or more parties employ the same attorney, their communications are not privileged as against each other; in a suit between the two parties, either can compel the attorney to disclose the communications.  129 Ariz. at 103, 628 P.2d at 986.  But nothing in *Hahman* suggests that by choosing joint representation or, in this case joint treatment, communications to the attorney or therapist are not privileged in actions against third parties.  *Id.*; *cf. Mrozinski v. Pogue*, 423 S.E.2d 405, 408 (Ga. Ct. App. 1992) ("The strongest public policy considerations militate against allowing a [mental health professional] to encourage a person to participate in joint therapy, to obtain his trust and extract all his confidences and place him in the most vulnerable position, and then abandon him on the trash heap of lost privilege.").

¶15        Indeed, contrary to Sonntag's assertion, here, unlike the situation in *Hahman*, Bruno's suit is against third parties and not Abeyta.  Thus, *Hahman* does not dictate that Bruno can require Abeyta to testify about their privileged communications if Abeyta wishes to maintain his privilege.  *Hahman*, 129 Ariz. at 103, 628 P.2d at 986.  If, however, Abeyta agrees to provide testimony on Bruno's behalf, the substance of which includes Abeyta volunteering his own privileged information to advance Bruno's case, the privilege is

---

[3]The rules define "[f]amily member" to include a "significant other."  Ariz. Admin. Code R4-6-101.

waived, and Abeyta will be open to questioning by third parties as well. Were we to find otherwise, we would be permitting Abeyta to use the privilege to present only that information he wishes to disclose in support of Bruno's claims, while shielding from Sonntag the information she seeks. *See Throop*, 94 Ariz. at 158, 382 P.2d at 568. On the record before us, Bruno's statement about Abeyta's testimony in his disclosure statement, noted above, is insufficient to establish that Abeyta will testify on Bruno's behalf in such a way as to improperly use the privilege as a sword and a shield.[4]

¶16 Sonntag further suggests, and the trial judge found, that by talking to Bruno about their treatment by Sonntag, Abeyta waived the privilege. But, even assuming arguendo Bruno could be considered a third party to Abeyta's therapy, nothing in Abeyta's communicating with Bruno about their joint therapeutic endeavors suggests an intent to waive the privilege. *Cf. State v. Archibeque*, 223 Ariz. 231, ¶ 24, 221 P.3d 1045, 1052 (App. 2009) (no waiver of clergy-penitent privilege when husband told wife about contents of confession); *State v. Sucharew*, 205 Ariz. 16, ¶¶ 11-12, 66 P.3d 59, 65 (App. 2003) (no waiver of attorney-client privilege when client's parents present during consultation).

¶17 Sonntag argues we can affirm the trial judge's ruling because HIPAA allowed her to disclose Abeyta's records. Quoting the federal regulation, she maintains HIPAA provides that no authorization is required for the disclosure of "psychotherapy notes" when the therapist uses the notes "to defend [her]self in a legal action or other proceeding brought by the individual." 45 C.F.R. § 164.508(a)(2)(i)(C). This provision does not apply because Abeyta has not brought a legal action against Sonntag.

---

[4]Notably, in his motion for a protective order, Abeyta stated: "No written consent has been obtained by any of the parties in this matter to disclose Mr. Abeyta's records." In her response to Abeyta's amended petition for special action, Sonntag asserts that Bruno has conceded that the "joint counseling sessions are not privileged in this litigation." (Emphasis omitted.) But, Bruno's concession does not waive Abeyta's privilege.

¶18 Sonntag also contends we could uphold the trial judge's ruling based on 45 C.F.R. § 164.512(e)(1)(i) and (ii), which provide for disclosures in judicial proceedings "in response to an order of a court" or "in response to a subpoena, discovery request, or other lawful process." But Sonntag does not cite to anything in the record before us that establishes or even suggests the privileged information was released pursuant to a court order, subpoena, or discovery request; they apparently were disclosed as part of the defendants' initial disclosures. And because the order is not supported by the law, it cannot supply the required justification.

¶19 Sonntag also contends that Abeyta's privileged information is relevant to her defense and due process requires that it be produced. In support of her argument, she relies solely on *State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 836 P.2d 445 (App. 1992). That case addresses the balance between a criminal defendant's rights to due process and the physician-patient privilege in the context of the Victims' Bill of Rights. *Id.* Its reasoning is not applicable here. And in any event, we cannot say Sonntag will be deprived of a meaningful defense if the privileged information is protected, assuming Abeyta does not attempt to testify about his own privileged material on Bruno's behalf. Sonntag argues Abeyta's privileged information is necessary to show what facilities she and Abeyta recommended to Bruno and how Bruno ultimately chose Sierra Tucson, and to show Bruno's state before his injury. But she has not shown that such evidence cannot be obtained from sources other than Abeyta's privileged information. Insofar as Sonntag's "chart" relates to Bruno and not to information obtained from Abeyta, that information can be used, as can non-privileged conversations between Abeyta and Bruno, and questions about Bruno's behavior, financial situation, or physical health could certainly be asked outside the context of the couple's counseling.

## Disposition

¶20 For the reasons stated above, the trial judge's order denying Abeyta's request for a protective order is vacated. The trial court is directed to enter a protective order consistent with this decision.