IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

IN RE THE MARRIAGE OF

MARC AARON WICHANSKY,
*Petitioner/Appellant/Cross-Appellee*,

*and*

ALEXIS HALEY WICHANSKY,
*Respondent/Appellee/Cross-Appellant.*

No. 2 CA-CV 2024-0192-FC
Filed October 29, 2025

———————————————

Appeal from the Superior Court in Maricopa County
No. FC2015009035
The Honorable Kevin Wein, Judge
The Honorable James Drake, Judge

**AFFIRMED**

———————————————

COUNSEL

Perkins Coie LLP, Phoenix
By Diane M. Johnsen and Victoria L. Romine

and

Rai Duer PC, Phoenix
By Peter B. Swann
*Counsel for Petitioner/Appellant/Cross-Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire and Alexandra Sandlin

and

Jared Family Law PLLC, Scottsdale
By Colin N. Jared
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**OPINION**

Vice Chief Judge Eppich authored the opinion of the Court, in which Judge Sklar and Judge O'Neil concurred.

---

E P P I C H, Vice Chief Judge:

**¶1**　　　　Marc Wichansky appeals from the trial court's order granting his former wife Alexis Wichansky's motion to divide undivided assets, as well as its denial of his motion to compel attorney communications and several post-judgment motions. Alexis cross-appeals from the court's order denying her motion to amend. Marc argues the court erroneously concluded he had not disclosed his interest in a business, Team Select, to Alexis, failed to enforce the Property Settlement Agreement (PSA) as written, and wrongly awarded over $3.68 million in attorney fees. On cross-appeal, Alexis asserts the court erred by not awarding her a higher amount of attorney fees. For the following reasons, we affirm.

### Factual and Procedural Background

**¶2**　　　　Marc and Alexis married in 2002. Marc petitioned for dissolution of marriage in November 2015. During dissolution proceedings, Marc and Alexis came to a settlement and filed a PSA with the trial court in September 2017. The language of the PSA, in relevant part, is as follows:

> **2. Disposition of Property**. . . . This agreement intends and does eliminate any and all claims made by wife to husband's business(s) interest, whether past, present or future.
>
> . . . .

**9. <u>Release of Claims.</u>** Subject to the provisions of this Agreement and the custody agreement each Party hereto:

(a) Releases the other Party from all further claims, rights, liabilities or obligations, arising out of or associated with their marriage, the Dissolution Action, or the division of their property or obligations. Specifically, wife waives any claims to any interest husband may have or has in any business, except as outlined below regarding the judgment for the MGA funds. Husband waives any claims for monies given to wife since the filing and reimbursement of any fees paid to wife's counsel or charged to any community credit card now known to husband and paid by husband currently.

For Wife's waiver of these claims, wife shall receive a portion of the net funds collected due to husband's judgment for his separate business interest known as the MGA judgment which business was sold during the marriage of the parties. . . .

(b) Both parties further release any and all rights, interests, or claims that he or she may now or hereafter have in any earnings or property . . . now owned or hereafter acquired by or on behalf of the other Party.

. . . .

**15. <u>Full Disclosure.</u>** The parties hereby warrant and represent to one another that each has made a full, fair, and complete disclosure of all assets and liabilities known to them. This agreement divides all community, common or joint property or property to which either party claims an interest, either directly or indirectly.

> Each party does hereby intend that this Agreement shall be and is a full and complete resolution of all issues between the parties. Each party hereby waives the right to any further disclosure and acknowledges that the right to seek further disclosure or discovery of any assets and/or liabilities is forever waived by this provision. Each party has made an undisputed decision to resolve all issues relating to their marriage, based upon the disclosure made available to each party and the other parties warranting of good faith and fair dealing in the disclosure of all property and debts.

¶3        The trial court entered the consent decree of dissolution that same month, incorporating the PSA by reference.  In October 2018, Alexis filed a motion to set aside the initial decree of dissolution and then amended her motion to divide undivided assets.  Afterward, the court permitted the issue to go forward and allowed Alexis to conduct discovery.  Marc moved to vacate this order for lack of subject-matter jurisdiction and also filed a motion to set aside the consent decree.  The court denied both motions.  After continued litigation, the court granted Alexis's motion to divide undivided assets in August 2021.  Marc filed a motion for reconsideration, which the court denied.  The court then ordered Marc to pay Alexis a judgment of $23,199,378.59 as well as $3,684,510.81 in attorney fees.  Both parties filed motions to amend, which the court denied.  Marc appealed, and Alexis cross-appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

**I.   Team Select Disclosure**

¶4        On appeal, Marc argues the trial court erroneously concluded he had not disclosed his interest in Team Select to Alexis.  "We review a trial court's findings of fact for abuse of discretion and reverse only when clearly erroneous."  *In re Marriage of Gibbs*, 227 Ariz. 403, ¶ 6 (App. 2011). "Factual findings are not clearly erroneous if substantial evidence supports them."  *In re $26,980 U.S. Currency*, 199 Ariz. 291, ¶ 9 (App. 2000).  Evidence is substantial if it permits a reasonable person to reach the court's result.  *Id.*

**¶5** Marc sent Alexis an email in September 2015, two months before filing his petition for dissolution. In this email, he acknowledged that Team Select was valuable and that they may need to hire a valuation expert in preparation for separating their community property. However, despite Alexis's continued questions throughout the dissolution proceedings as to his interest in Team Select, Marc and his attorneys expressly and repeatedly denied that he held any interest in it.[1] Alexis signed the PSA, which did not specifically mention Team Select, and the PSA was incorporated into the decree of dissolution on September 15, 2017. Marc received $10 million from the sale of Team Select a little over two weeks later, with future payments to follow. Still, Marc continued to assert he did not have any interest in Team Select.

**¶6** Alexis filed a motion to divide undivided assets, and at trial she testified that Marc had not informed her of his ownership interest in Team Select. She presented numerous statements from Marc and his attorneys to support her testimony.

**¶7** On appeal, Marc claims that his interest in Team Select was only an "ambiguous handshake agreement, and a hope," of which Alexis was aware. He also argues the 2015 email sufficiently disclosed his interest in Team Select, despite his numerous subsequent denials to her and to the trial court of any interest in the asset.

**¶8** Marc's arguments on appeal lack merit. The trial court did not abuse its discretion by finding the 2015 email was insufficient disclosure because Marc repeatedly denied any ownership in Team Select instead of providing Alexis with information that would assist her in evaluating his interest in the company. *See* Ariz. R. Fam. Law P. 49(g)(6). His next assertion, that Alexis was informed of his "handshake agreement, and a hope," is contradicted by the record. We do not reweigh the credibility of witnesses on appeal, *see In re Ghostley*, 248 Ariz. 112, ¶ 21 (App. 2020), and the court found credible Alexis's testimony, supported by ample evidence, that Marc had denied having any interest in Team Select. A reasonable person could thus conclude Marc did not disclose his interest in Team

---

[1] Some examples include, "At no time has [Marc] ever had an interest in the company," "Marc does not own [Team Select] now or ever," "As far as [T]eam [S]elect, [Marc] has never owned, nor does he now, have any ownership interest in the business . . . He is not an owner, he has no stock . . . He has nothing," "He received no interest in the business," "[H]e doesn't have ownership in it," and, "He does not own anything."

Select. *See $26,980 U.S. Currency*, 199 Ariz. 291, ¶ 9. Therefore, the court's finding was not clearly erroneous. *See Marriage of Gibbs*, 227 Ariz. 403, ¶ 6.

## II. Motion to Compel

**¶9** Marc next contends the trial court erroneously denied his motion to compel discovery because Alexis impliedly waived her attorney-client privilege by stating that her understanding of what was included in the PSA was based on communications with her attorney. We review whether a party has impliedly waived the attorney-client privilege de novo, as this poses a mixed question of law and fact. *Empire W. Title Agency, L.L.C. v. Talamante*, 234 Ariz. 497, ¶ 8 (2014).

**¶10** Before trial, Marc deposed Alexis and she testified that she understood any asset not included in the PSA to be an "omitted asset" under A.R.S. § 25-318(D). When asked where her understanding of § 25-318(D) came from, she replied, "My lawyer at the time." Marc moved to compel discovery of these communications between Alexis and her attorney, arguing that Alexis had "made this case about *her understanding and intent* regarding the PSA." The trial court denied his request, concluding Alexis's motion to divide undivided assets did not depend on the substance of the privileged communications.

**¶11** In order for there to be an implied waiver of attorney-client privilege, there must be an assertion of the privilege; the asserting party must put the protected information at issue; and application of the privilege must deny the opposing party access to information vital to his or her defense. *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, ¶ 10 (2000) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). When a party uses the privilege as both a "sword and a shield," the privilege has been waived. *Id.* ¶ 18. However, "neither the 'relevance nor pragmatic importance alone [of the information sought] will support a finding that the attorney-client privilege has been waived.'" *Empire W. Title Agency*, 234 Ariz. 497, ¶ 10 (alteration in *Empire W. Title Agency*) (quoting *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 22 (2003)). The party asserting the privilege must have affirmatively put his or her mental state or subjective knowledge at issue. *Id.* ¶ 14.

**¶12** An important preliminary question is to determine Alexis's position in asserting her case. In her motion to divide undivided assets, Alexis asked the trial court to grant relief on the ground that Team Select was an omitted asset that Marc had failed to disclose during dissolution proceedings. In concluding that "the parties did not intend for the PSA to

apply to [Marc]'s ownership interest in Team Select," the court found that he had repeatedly failed to disclose that asset in violation of the PSA's good-faith disclosure requirement. Based on that finding, the court determined that Marc could not benefit from the release provision contained in section fifteen of the PSA, and thus Team Select was an omitted asset under that contract. None of this reasoning suggests that Alexis's subjective interpretation of the contract was at issue. Instead, Marc's failure to disclose his interest in Team Select caused the court to find it to be an omitted asset that he and Alexis equally owned as tenants in common under § 25-318(D).

¶13 The lone case Marc cites to support his position, *State Farm Mutual Automobile Insurance Co. v. Lee*, is distinguishable. In that case, the party claiming attorney-client privilege was defending against a bad-faith claim and asserted that its communications with its attorneys was proof of i subjective good faith. *Lee*, 199 Ariz. 52, ¶ 15. Here, Alexis's claim did not rely on her subjective interpretation of the contract or her reliance on her attorney's advice when signing the PSA. Instead, her claim relied on Marc's repeated misrepresentations to her that he did not have any ownership interest in Team Select. Therefore, because Alexis did not put the privileged information at issue, she did not waive her attorney-client privilege. *See Empire W. Title Agency*, 234 Ariz. 497, ¶¶ 8, 14.

¶14 Even if we were to conclude Alexis had put her subjective interpretation of the contract at issue, Marc fails to show how application of the privilege denied him access to information vital to his defense. *See Lee*, 199 Ariz. 52, ¶¶ 10, 23. Marc questioned Alexis concerning her understanding of the PSA at her deposition and at trial. Alexis's discussions with her attorneys about her understanding of the PSA is not vital to his claim that he had disclosed his interest in the asset. *See Twin City Fire Ins. Co.*, 204 Ariz. 251, ¶ 22.

## III. Extrinsic Evidence

¶15 Marc next asserts that because the PSA was unambiguous, the trial court erred by allowing extrinsic evidence at trial to help interpret it. We review de novo whether contract language is ambiguous so that extrinsic evidence is permitted. *See In re Estate of Lamparella*, 210 Ariz. 246, ¶ 21 (App. 2005). But we review the court's evidentiary rulings for an abuse of discretion. *See Larsen v. Decker*, 196 Ariz. 239, ¶ 6 (App. 2000); *see also Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 155 (1993) (trial court has discretion to decide when to admit extrinsic evidence because it is "in the best position to decide how to proceed").

¶16 Before trial, Marc filed a motion to set aside the consent decree. He argued that the PSA was "clear and unambiguous" as to Alexis's waiver of her interest in Team Select. The trial court denied the motion and found the language of the release to be ambiguous. Marc later filed a motion for summary judgment, where he again claimed the PSA was unambiguous. The court denied this motion, and "continue[d] to find the PSA ambiguous." At trial, the court considered extrinsic evidence in the form of Alexis's testimony that she did not believe Team Select was covered by the PSA because Marc had denied owning it.

¶17 Arizona law adopts a permissive approach to the parol evidence rule. *Long v. City of Glendale*, 208 Ariz. 319, ¶ 27 (App. 2004). Before the trial court can admit extrinsic evidence when interpreting a contract, it must first consider the offered evidence, and if the contract is "reasonably susceptible" to the proponent's interpretation, the evidence is admissible. *Lamparella*, 210 Ariz. 246, ¶ 22 (quoting *Taylor*, 175 Ariz. at 154). If the asserted interpretation is unreasonable, or the offered evidence is not persuasive, the court need not admit the extrinsic evidence. *Taylor*, 175 Ariz. at 155.

¶18 Here, the trial court correctly concluded Alexis's interpretation of the PSA was reasonable. While section two of the PSA broadly waives "any and all" of Alexis's claims to Marc's business interests, and section nine contains a similar release provision, these waivers are not unqualified. The entire agreement is subject to section fifteen's full-disclosure requirement, with which the court concluded Marc did not comply. As explained above, we defer to the trial court's finding of fact if it is not clearly erroneous. *Marriage of Gibbs*, 227 Ariz. 403, ¶ 6. As such, Alexis's interpretation of the PSA was reasonable, and the court did not err by considering extrinsic evidence in its interpretation of the contract. *See Taylor*, 175 Ariz. at 155.

## IV. Team Select Waiver

¶19 Marc next argues Alexis waived any interest she may have had in Team Select by signing the PSA, and because the PSA provided for Team Select, the trial court erred by granting her motion to divide an undivided interest under § 25-318(D). We review the trial court's interpretation of contracts such as the PSA de novo. *See Rinegar v. Rinegar*, 231 Ariz. 85, ¶ 14 (App. 2012); *In re Marriage of McCulloch & Parker*, 257 Ariz. 195, ¶ 34 (App. 2024).

¶20        Before trial, Marc filed a motion to set aside the consent decree, claiming, as he does on appeal, that Alexis waived any interest she may have had in Team Select by signing the PSA. The trial court denied this motion, finding Team Select was not identified in the PSA, and therefore it was not clear if Alexis had waived her interest in that particular asset. Marc later filed a motion for summary judgment, in which he again claimed the PSA included a waiver of her interest in Team Select. The court, following its prior reasoning, denied this motion, finding neither the PSA, divorce decree, nor settlement negotiations made any mention of Team Select and therefore the PSA did not clearly contain a release of interest in Team Select.

¶21        Marc asserts sections two and nine of the PSA include catch-all provisions where Alexis waived her interest in any business he may have had an interest in at the time of signing, including Team Select. Therefore, Marc contends, Team Select was provided for by the PSA and cannot be an omitted asset divisible by § 25-318(D). Alexis argues Team Select is not included in the catch-all provision because Marc did not comply with the full-disclosure provision of the agreement in section fifteen, and thus is not provided for by the PSA.

¶22        A PSA incorporated into the decree of dissolution is an independent contract and is governed by the principles of contract law. *MacMillan v. Schwartz*, 226 Ariz. 584, ¶ 15 (App. 2011). "[A] court will attempt to enforce a contract according to the parties' intent." *Taylor*, 175 Ariz. at 152. Under § 25-318(D), any community property that is not provided for in the decree is held by the parties as tenants in common. This statute does not apply when all of the parties' assets are explicitly disposed. *Lamparella*, 210 Ariz. 246, ¶ 2. Additionally, § 25-318(F) requires the decree to specifically describe any property affected.

¶23        Here, Alexis's contention that Team Select was not included in the PSA, despite the catch-all waiver provision, was correct considering Marc's repeated claims he had no interest in the asset. The PSA includes a provision requiring full disclosure of all assets by both parties. Alexis's testimonial extrinsic evidence demonstrated that Marc did not comply with this provision. The trial court found her testimony that the PSA was not intended to cover Team Select to be "credible and supported by the evidence." We defer to the court's findings of credibility, *Ghostley*, 248 Ariz. 112, ¶ 21, and similarly conclude the PSA did not provide for Team Select, *cf. Lamparella*, 210 Ariz. 246, ¶¶ 25-26 (an unqualified catch-all provision

applies to any and all property not otherwise identified in the agreement and the property is not divisible under § 25-318(D)).

## V. Attorney Fees

**¶24** Marc argues that the trial court erred in its award of attorney fees. We will not disturb a court's award of attorney fees absent an abuse of discretion. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, ¶ 29 (App. 2019).

**¶25** Alexis hired her current attorneys in April 2019 and July 2021. She entered into a contingency fee agreement to pay them collectively 33.3 percent of all gross amounts recovered. Her attorneys completed approximately four thousand hours of work spanning over five years during the course of litigation. The trial court awarded her fees for the litigation related to two separate assets, MGA Employee Services, Inc. ("MGA"), and Team Select.

**¶26** The PSA included a provision concerning litigation Marc was involved in with his former company, MGA. Under the PSA, if Marc received a judgment net payment of $8 million or more, Alexis would receive $2.5 million. Marc admitted to receiving a disbursement above the agreed-upon $8 million, but failed to provide Alexis with any accounting of the proceeds or to pay her any amount. Alexis's attorneys petitioned the trial court to enforce the decree. Later, Alexis filed a motion for summary judgment on her petition to enforce the decree. The court granted Alexis's petition and awarded her attorney fees.

**¶27** During the Team Select litigation, the trial court held two trials. In the first, the court considered whether to grant Alexis's motion to divide Team Select as an undivided asset. Her motion was granted, and as the prevailing party, the court awarded her attorney fees "associated with the MGA litigation only." It determined Marc had significantly greater financial resources than Alexis, he had acted unreasonably during proceedings, and the continency fee agreement was appropriate.

**¶28** Alexis filed an application and affidavit in support of the award of attorney fees for the MGA litigation, requesting the contingency fee amount owed, $832,500, although her attorneys calculated the actual fees incurred to only be around $35,000. Marc filed a response, contending the amount requested was unreasonable. Ultimately, the trial court deferred ruling until the Team Select litigation was complete. In its August

2021 ruling, the court conducted an eight-factor *Fallers*[2] test to evaluate the reasonableness of the contingency fee for the MGA litigation and determined that "while a contingency fee arrangement is appropriate here, a full 1/3 fee is not called for." Instead, it awarded $500,000 for fees in association with the MGA litigation.

¶29 In regard to the Team Select litigation, the trial court found the amount of attorney fees could not be calculated until Team Select's value was determined. After trial, the court valued Alexis's share in Team Select to be worth approximately $23.2 million, including pre-judgment interest. The court also found the lodestar calculation to be "fair and equitable" and applied a lodestar multiplier of 1.5 to the ultimate fee calculation, resulting in a fee award of approximately $3.68 million. It awarded fees for both awards under A.R.S. §§ 25-324 and 12-341.01.

¶30 On appeal, Marc argues the trial court erred by only considering the contingency agreement and not the lodestar calculation for the MGA litigation, the Team Select fee award was unreasonably high, the contingent-fee rationale does not apply where there is a fee-shifting statute, and the court committed mathematical errors in its fee awards. Alexis contends the court correctly awarded $500,000 for the MGA litigation, the Team Select fee award was reasonable, the court can award contingency fees even if there is a fee-shifting statute, and the court "appropriately considered the full amount of attorney's fees and costs" and "did not create an error." She further argues the court erred by not awarding her more in attorney fees.

## A. MGA & Team Select Litigation Fee Award

¶31 In deciding whether to award fees under A.R.S. § 25-324(A), the trial court must consider the financial resources of both parties and the reasonableness of each party's positions during litigation. The fee award may cover "the costs and expenses of maintaining or defending any proceeding. . . ." *Id.* Costs and expenses "may include attorney fees, deposition costs and other reasonable expenses as the court finds necessary." § 25-324(C). Under § 25-324, a court is permitted to award fees

---

[2]*In re Conservatorship of Fallers*, 181 Ariz. 227, 229-30 & n.2 (App. 1994) (citing *In re Swartz*, 141 Ariz. 266, 271 (1984) and Ariz. R. Sup. Ct. 42, ER 1.5(a)).

based on differences in financial resources alone. *See Goodell v. Goodell*, 257 Ariz. 563, ¶ 41 (App. 2024).

**¶32** It is undisputed that Marc has greater financial resources than Alexis. In its award of attorney fees for the MGA litigation, the trial court awarded Alexis her attorney fees based on this disparity. The court did not abuse its discretion in so doing. *See id.*

**¶33** As for the Team Select litigation, the trial court again noted Marc's greater financial resources and further found that Marc took "unreasonable positions" that "caused extensive delays and protracted litigation." The ultimate attorney fees awarded for both the MGA litigation and the Team Select litigation did not exceed the costs Alexis incurred by hiring counsel and agreeing to a one-third contingency fee. The language of § 25-324 does not expressly prohibit a contingency fee from being considered as part of the cost of litigation. Therefore, the court did not abuse its discretion by awarding attorney fees. *See Lehn*, 246 Ariz. 277, ¶ 29.

**¶34** Moreover, the trial court also relied on A.R.S. § 12-341.01 in its attorney fees award. To the extent this case could be construed as a contract action, we cannot say the court abused its discretion in awarding fees under § 12-341.01. *See Lehn*, 246 Ariz. 277, ¶ 29.

**¶35** We have previously concluded that a separate agreement incorporated into a dissolution decree maintains its status as an enforceable contract. *See Chopin v. Chopin*, 224 Ariz. 425, ¶ 6 (App. 2010). If there is a causal link between a party's claim and an underlying contract, it is appropriate for the trial court to award fees under § 12-341.01(A). *Marcus v. Fox*, 150 Ariz. 333, 335-36 (1986). Under § 12-341.01(A), the court may award reasonable attorney fees to the successful party. The award does not need to equal, but cannot be more than, the "amount paid or agreed to be paid." § 12-341.01(B). The court has broad discretion to determine what fees are reasonable. *Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, ¶ 85 (App. 2012). A court begins its determination by reviewing "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, ¶ 42 (App. 2009) (quoting *Timmons v. City of Tucson*, 171 Ariz. 350, 357 (App. 1991)). This figure is known as the "lodestar," and it is presumptively reasonable. *See id.* We have affirmed an attorney fees award in excess of the lodestar. *Lindsey v. Univ. of Ariz.*, 157 Ariz. 48, 54-55 (App. 1987).

¶36    While Marc is correct that the trial court is not required to award fees based on what is in the contingency agreement, *see Sunland Dairy LLC v. Milky Way Dairy LLC*, 251 Ariz. 64, ¶ 30 (App. 2021), under § 12-341.01(B) the court is permitted to award up to the amount contracted, *see Cont'l Townhouses E. Unit One Ass'n v. Brockbank*, 152 Ariz. 537, 545-46 (App. 1986).  Here, the multiplier used by the court resulted in an attorney fees award that was less than the amount agreed to under the contingency agreement.  Therefore, the court's award of attorney fees to Alexis was reasonable.  *See Flood Control Dist.*, 230 Ariz. 29, ¶ 85.

## B.  Mathematical Errors

¶37    Marc also contends the trial court committed two mathematical errors in its attorney fees calculation.  We review the court's award of attorney fees for an abuse of discretion.  *Bogard*, 221 Ariz. 325, ¶ 39.  If the court's reasoning is "untenable, legally incorrect, or amount[s] to a denial of justice," the court has abused its discretion.  *Id.* (quoting *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, ¶ 17 (App. 2006)).

¶38    On page eight of the judgment awarding Alexis her Team Select attorney fees, the trial court calculated her costs to be $125,371.84 and her fees to be $1,298,283.75; totaling $1,423,655.59.  However, on page eleven of the judgment, the court listed Alexis's fees as $1,423,655.59 and again added $125,371.84—double counting her costs.  The court also determined a lodestar multiplier of 1.5 was appropriate, but instead of multiplying the correct lodestar of $1,298,283.75, it used the incorrect amount of $1,423,655.59.  Marc filed a motion to amend the judgment, arguing these calculation errors should be corrected.  However, the court declined to recalculate its award.  Marc makes the same argument on appeal.

¶39    Although we would otherwise be inclined to remand for the trial court to address this argument in the first instance, the court has already done so when it rejected Marc's motion to amend the judgment.  We need not remand only for the court to repeat the same exercise of discretion.  Although the court did not explain why it decided against changing the award in light of the prior calculation errors, implicit in the court's denial is the conclusion that the total amount awarded was appropriate even after those errors had been brought to the court's attention.  Because the amount was reasonable and within the trial court's discretion, we affirm.  *See Bogard*, 221 Ariz. 325, ¶ 39.

## C. Cross-Appeal

**¶40**    On cross-appeal, Alexis argues the trial court should have awarded her more in attorney fees.  Our standard of review remains one of an abuse of discretion.  *See Lehn*, 246 Ariz. 277, ¶ 29; *Flood Control Dist.*, 230 Ariz. 29, ¶ 84.  For the same reason Alexis prevails above, she does not prevail here.

**¶41**    As we discuss above, the trial court has broad discretion to determine what fees are reasonable under both § 25-324, *see Armer v. Armer*, 105 Ariz. 284, 289 (1970), and § 12-341.01, *see Flood Control Dist.*, 230 Ariz. 29, ¶ 85.  Alexis fails to demonstrate how the court abused that discretion in its fee award.  Although the court is permitted to award attorney fees up to the contingency agreement, so long as they are reasonable, it is not required to do so.  *See Sunland Dairy LLC*, 251 Ariz. 64, ¶¶ 30-32.  Therefore, we cannot say the court abused its discretion by not awarding Alexis a higher amount of attorney fees.  *See Lehn*, 246 Ariz. 277, ¶ 29; *Flood Control Dist.*, 230 Ariz. 29, ¶ 84.

## D. Attorney Fees on Appeal

**¶42**    Both parties request an award of attorney fees on appeal under §§ 12-341.01 and 25-324.   We conclude Marc has taken an unreasonable position by maintaining his claim on appeal that the PSA precluded Alexis's claim of a share in the interests in Team Select, despite the trial court's credibility finding—to which we defer—as to his repeated denials of any interest despite the PSA's clear disclosure obligation.  *See Ghostley*, 248 Ariz. 112, ¶ 21.   We therefore award Alexis her appellate attorney fees pursuant to § 25-324.  As Alexis has substantially prevailed on appeal, she may recover her appellate costs upon compliance with Rule 21, Ariz. R. Civ. App. P.  *See* A.R.S. § 12-341.

## Disposition

**¶43**    For the foregoing reasons, we affirm.