IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 30 2006

COURT OF APPEALS
DIVISION TWO

FRED MILLER, M.D. and PAMELA        )
EILEEN MILLER, husband and wife,    )
                                    )
                    Petitioners,    )
                                    )          2 CA-SA 2005-0102
            v.                      )          DEPARTMENT A
                                    )
THE HONORABLE JOHN F. KELLY,        )          O P I N I O N
Judge of the Superior Court of the State )
of Arizona, in and for the County of Pima, )
                                    )
                    Respondent,     )
                                    )
            and                     )
                                    )
LUZ BARRERA, Personal               )
Representative of the Estate of Lucia )
Del Moral on behalf of the estate and )
individually as her surviving child, )
                                    )
            Real Party in Interest, )
                                    )
            and                     )
                                    )
MUTUAL INSURANCE COMPANY            )
OF ARIZONA,                         )
                                    )
                    Intervenor.     )
_____)


SPECIAL ACTION PROCEEDING

Pima County Cause No. C20045161

JURISDICTION ACCEPTED; RELIEF GRANTED

Chandler & Udall, L.L.P.
  By Edwin M. Gaines, Jr.
  and Michele G. Thompson                                    Tucson
                                             Attorneys for Petitioners


Haralson, Miller, Pitt, Feldman & McAnally, P.C.
  By Thomas G. Cotter and Rebecca A. Reed                    Tucson
                                            Attorneys for Real Party
                                                in Interest Barrera


Gallagher & Kennedy, P.A.
  By Brian Schulman and Maureen A. Welsh                    Phoenix
                                            Attorneys for Intervenor
                                  Mutual Insurance Company of Arizona

¶1        In this special action, petitioners Fred Miller, M.D. and Pamela Eileen Miller, defendants in the underlying wrongful death action based, in part, on Dr. Miller's alleged medical malpractice, filed by real party in interest Luz Barrera, personal representative of the estate of decedent Lucia Del Moral and Del Moral's surviving child, challenge the respondent judge's order granting Barrera's motion to compel Dr. Miller to disclose amounts paid in settlement of previous medical malpractice actions brought against him. The Millers contend this information is not discoverable because it is both privileged and irrelevant. We have permitted Mutual Insurance Company of Arizona, Dr. Miller's malpractice insurance carrier, to intervene in the Millers' special action petition. "Special action review of an order compelling discovery over the objection of a party asserting a privilege is appropriate because there is no equally plain, speedy, or adequate remedy by appeal." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 3, 63 P.3d 282, 283 (2003); *see also S. Pac. Transp. Co. v.*

2

*Veliz*, 117 Ariz. 199, 201, 571 P.2d 696, 698 (App. 1977) (finding appropriate special action review of order compelling railroad to disclose amounts paid in settlement of previous lawsuits); Ariz. R. P. Spec. Actions 1(a), 17B A.R.S. (special action jurisdiction appropriate when there is no equally plain, speedy, or adequate remedy by appeal). We therefore accept jurisdiction of this special action and, because we find the respondent judge abused his discretion, grant relief. *See* Ariz. R. P. Spec. Actions 3(c) (among questions that may be raised in special action is whether ruling was abuse of discretion).

¶2        Barrera filed the underlying action against the Millers and others, alleging, inter alia, that her mother's death had resulted from Dr. Miller's failure to timely diagnose, treat, and monitor her mother's decubitus ulcers. Barrera served Dr. Miller with discovery requests, including interrogatories that asked for information about previous lawsuits filed against him for medical negligence. Dr. Miller provided information about two lawsuits, noting that they had been resolved by private settlement and giving additional information about the cases during his deposition. But Dr. Miller refused to specify the amounts paid in settlement of these lawsuits, claiming the information is confidential and irrelevant. Barrera filed a motion to compel discovery, which Dr. Miller opposed. After a hearing, the respondent judge granted the motion. The respondent found that "the amounts for which Miller [had] settled previous medical malpractice actions against him are reasonably calculated to lead to the discovery of admissible evidence. At a minimum, this information may be used to impeach Miller's expert testimony." The respondent judge concluded that this court's decision in *Southern Pacific* is "inapposite" because here, the respondent found,

3

"the information [sought] is relevant." The respondent subsequently denied Dr. Miller's motion for reconsideration, and this special action followed. On December 30, 2005, this court stayed the respondent's order pending the outcome of this special action.

¶3        Relying primarily on *Southern Pacific*, the Millers contend the amounts paid in settlement of previous malpractice claims against Dr. Miller are irrelevant to the wrongful death action. They also maintain that the information is privileged and confidential, relying on language in the settlement agreements, A.R.S. § 12-2238, and Rule 408, Ariz. R. Evid., 17A A.R.S. In response, Barrera begins by insisting that the information is relevant to her prayer for punitive damages. Although she denies intending to use the information to establish that Dr. Miller acted negligently, she contends she may use it to impeach him, both in his role as a lay witness and as a potential expert witness on the applicable standard of care. She also argues that "[Dr.] Miller's knowledge of previous like circumstances, and the ultimate outcome of those situations, reveals his knowledge of the standard of care and his credibility and credentials as an expert." Barrera adds that the "prior settlement amounts are intimately tied to his knowledge of the effects of his prior negligent acts, and are thus relevant to his ability to testify on his own behalf here." In addition, she contends "[t]he amounts of those settlements are indicative of the seriousness of [Dr.] Miller's previous malpractice and the prior claims against him, and thus are inherently relevant to how well he understands what practice the standard of care requires."

¶4        Barrera is correct that discovery issues are left to the discretion of trial courts. *See Twin City*, 204 Ariz. 251, ¶ 10, 63 P.3d at 284. But, in light of this court's decision in

4

*Southern Pacific* and the purposes for which Barrera intends to use the evidence of the amounts paid in settlement of the prior actions, we conclude the respondent judge erred as a matter of law, which is, in and of itself, an abuse of discretion. *See Twin City*, 204 Ariz. 251, ¶ 10, 63 P.3d at 285 ("[W]hen a judge commits an 'error of law . . . in the process of reaching [a] discretionary conclusion,' he may be regarded as having abused his discretion.") (alterations in *Twin City*), *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982).

¶5        In *Southern Pacific*, the plaintiffs sued the railroad for injuries received in an automobile-train collision allegedly the result of the railroad's negligent maintenance of its crossing. 117 Ariz. at 200, 571 P.2d at 697. The trial judge granted the plaintiffs' motion to compel the railroad to answer questions about previous lawsuits against it, including the amounts paid in settlement of other lawsuits for automobile-train collisions. *Id*. The railroad sought special action relief. *Id*. The plaintiffs contended that the settlement "figures would help them ascertain whether the railroad was aware that substantial bodily harm and death could be involved in a continued practice of failing to gate many of its crossings." *Id*. at 200-01, 571 P.2d 697-98. This court rejected that claim, stating, "[T]he mere fact that the railroad has paid out sums for failure to gate other crossings does not mean it was negligent in failing to gate this particular crossing." *Id*. at 201, 571 P.2d at 698.

¶6        The plaintiffs also maintained that the settlement figures were "relevant to a determination of the amount of punitive damages to be levied against the railroad should such damages be awarded." *Id*. This court rejected that contention as well, finding that "the

5

mere fact that the railroad has paid out sums in the past[,] for whatever reasons, does nothing to show negligence let alone gross negligence on its part in the present case nor does it determine suitable figures for punitive damages purposes." *Id*. Reversing the trial judge's order, we noted: "It is uniformly recognized that offers of settlements of similar claims with other parties, even if arising out of the same fact situation, are inadmissible and irrelevant." *Id*. at 200, 571 P.2d at 697.

¶7        *Southern Pacific* is not materially distinguishable from the case before us. That the facts underlying the previous actions against Dr. Miller are similar to the facts alleged in the action here does not render *Southern Pacific* inapplicable. This court made it clear in *Southern Pacific* that the outcome would have been the same had the facts of the prior accidents been the same. Barrera also insists that this case is different because she, unlike the railroad in *Southern Pacific*, is seeking to use the information to impeach Dr. Miller's credibility as both a lay and an expert witness, "his pattern and practice of elder care, and his knowledge of the risks of harm to Mrs. Del Moral for purposes of punitive damages." That does not sufficiently distinguish this case from *Southern Pacific* and make the amount of the settlements any more relevant in this case than it was there. Notwithstanding Barrera's assertion that the information would be used primarily to impeach Dr. Miller, Barrera would, in effect, be seeking to establish his negligence by so doing. *Southern Pacific* makes clear that evidence of prior punitive damage awards is not relevant for that purpose. Moreover, Barrera appears to intend to use the evidence directly and affirmatively in support of her punitive damage claim.

6

¶8 In short, whether the evidence were to be used to impeach Dr. Miller's credibility as an expert or to directly and affirmatively support Barrera's claims that he acted negligently and that punitive damages were warranted makes no difference in terms of the applicability of the underlying principle established in *Southern Pacific*: the amount paid in settlement of a claim establishes neither negligence nor gross negligence. *Id*. at 201, 571 P.2d at 698. The evidence is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *See* Ariz. R. Civ. P. 26(b), 16 A.R.S., Pt. 1.

¶9 We note, moreover, as Dr. Miller pointed out both at the hearing on the motion to compel disclosure and in this special action, the respondent judge has not precluded Barrera from impeaching him with evidence about the circumstances that gave rise to the other lawsuits. Nor would Barrera be precluded from using the prior incidents affirmatively to support her claim for punitive damages. Barrera does not need to introduce the amounts of the settlements as well.

¶10 Barrera contends the respondent judge correctly applied this court's decision in *Ingalls v. Superior Court*, 117 Ariz. 448, 573 P.2d 522 (App. 1977), in granting the motion to compel disclosure. In that case, this court permitted discovery of information that was the subject of a previous confidential settlement agreement entered into by the defendant. *Id*. at 449, 573 P.2d at 523. This court held that the information was not privileged and that the agreement of confidentiality could not be used to "thwart a court-ordered production of material" under the broad rules of discovery. *Id*. at 450, 573 P.2d at 524. But we added: "We are not here confronted with the possible relevancy or lack of it regarding the

7

sought-after information, relevancy not having been raised by the real parties in interest."
*Id*. Citing *Southern Pacific*, this court stated, "It may well be that the relief which we grant would lead to irrelevant information improper for discovery." *Id.* This is that case.

¶11 We agree with Dr. Miller as well that the decision by Division One of this court in *Gasiorowski v. Hose*, 182 Ariz. 376, 897 P.2d 678 (App. 1994), does not require us to reach a different result. There, the plaintiff brought a medical malpractice action against a physician whose defense was that he had threaded an epidural catheter into the plaintiff's spinal canal in accordance with the proper standard for and routine method of performing the procedure. *Id*. at 377, 897 P.2d at 679. The doctor testified as the defense expert on the standard of care for the procedure. *Id*. at 378, 897 P.2d at 680. The plaintiff sought to impeach him at trial with evidence that, fourteen months after the plaintiff was injured, the hospital had suspended the physician's on-call privileges because of several incidents in which he had had difficulty inserting the catheter. *Id*. at 377, 897 P.2d at 679. That case involved the admissibility for impeachment purposes of other negligent acts, not the discoverability of amounts paid in settlement of other lawsuits pursuant to agreements that require the amounts be kept confidential. But, as we stated above, Barrera is not being prevented from impeaching Dr. Miller as an expert with evidence about the other lawsuits, assuming the trial court determines that such evidence is admissible. She is only being prevented from impeaching him with the amounts of the settlements because those amounts are irrelevant. Therefore, *Gasiorowski* does not address the issue we confront here.

8

¶12        In addition to the respondent judge's error in concluding the information sought was relevant and discoverable, his ruling is contrary to the strong public policy encouraging settlement of lawsuits, which would be thwarted by disclosure of information intended to remain confidential. That policy is reflected in A.R.S. § 12-2238, which recognizes as privileged and confidential "[c]ommunications made, materials created for or used and acts occurring during a mediation." Similarly, Rule 408, Ariz. R. Evid., renders inadmissible evidence of a compromise or offers of compromise. *See also* Fed. R. Evid. 408, Advisory Comm. Note (purpose of Rule 408 is to promote "the public policy favoring the compromise settlement of disputes" and encouraging parties to communicate freely); *State v. Green*, 200 Ariz. 496, ¶ 10, 29 P.3d 271, 273 (2001) ("When interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance."). As Dr. Miller points out, Rule 408 arguably applies not only to the litigation out of which the settlement arose, but also to negotiations between one of those parties and a different party in another lawsuit. Fed. R. Evid. 408, Advisory Comm. Note ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. The latter situation will not . . . ordinarily occur except when a party to the present litigation has compromised with a third person."). Even assuming that neither the statute nor the rule creates a privilege, the policy concerns energizing both apply with special force here.

¶13        Permitting disclosure of amounts paid in settlement of a lawsuit contrary to an express provision ensuring the confidentiality of that information likely would discourage

parties from settling. And disclosure of that information poses the risk that conclusions will be drawn about the paying party's culpability and the degree of culpability based on the fact that payment was made and the amount. As this court noted in *Southern Pacific*, that a party has paid an amount to settle an action does not necessarily mean the party was liable nor does it carry any significance on the extent of the party's culpability. 117 Ariz. at 201, 571 P.2d at 698; *see also* Fed. R. Evid. 408, Advisory Comm. Notes (such evidence is excluded because it is "irrelevant, since the offer may be motivated by a desire for peace," not an admission of weakness; amount offered may relate to size of claim "and may also be influenced by other circumstances").

¶14     Based on the foregoing, we find the respondent judge abused his discretion by compelling Dr. Miller to disclose the amounts paid to settle prior lawsuits against him. Therefore, we reverse that portion of the respondent judge's October 26, 2005, order. This court's order staying the October 26 order is vacated.

_____
                              J. WILLIAM BRAMMER, JR., Judge

Presiding Judge Howard and Judge Eckerstrom concurring.

10