IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**BRENT RANDALL PHILLIPS,**
*Petitioner,*

*v.*

**THE HONORABLE WILLIAM O'NEIL, PRESIDING DISCIPLINARY JUDGE,**
*Respondent Judge,*

**STATE BAR OF ARIZONA,**
*Real Party in Interest.*

No. CV-17-0122-SA
Filed December 20, 2017

Special Action from the Office of the Presiding Disciplinary Judge
No. PDJ2016-9128
**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL:

Ralph Adams (argued), Karen Clark (argued), Adams & Clark, PC, Phoenix, Attorneys for Brent Randall Phillips

James D. Lee (argued), Senior Bar Counsel, Attorney for State Bar of Arizona

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Jennifer M. Perkins (argued), Assistant Solicitor General, Phoenix, Attorneys for Amicus Curiae State of Arizona

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, and GOULD joined. JUSTICE BOLICK dissented.

JUSTICE LOPEZ, opinion of the Court:

¶1        This case concerns the application of Arizona Rules of Evidence 408 and 613 when the State Bar of Arizona seeks to use a consent judgment entered in another matter in attorney disciplinary proceedings. We hold that Rule 408 precludes use of a consent judgment to prove substantive facts to establish liability for a subsequent claim, and a consent judgment likewise cannot be used for impeachment purposes under Rule 613.

## BACKGROUND

¶2        Disciplinary proceedings are currently pending against attorney Brent Phillips before the Presiding Disciplinary Judge ("PDJ"). Prior to these proceedings, the Arizona Attorney General sued Phillips for violations of the Arizona Consumer Fraud Act ("CFA"), A.R.S. §§ 44-1521 to -1534. The state alleged that he mailed deceptive advertisements to Arizona consumers. Among other violations, the advertisements led consumers to mistakenly believe they were eligible for mortgage payment or interest rate deductions and were worded in a way that made some consumers think the mortgage lenders sent the advertisements. The advertisements also made the program look selective when it was not, and Phillips' fee agreements required consumers to pay attorney fees up front, even if the lender ultimately denied the application to modify the consumers' mortgage loan terms. The disciplinary proceedings also relate to this conduct.

¶3        To resolve the Attorney General's CFA action, Phillips agreed to a consent judgment ("Judgment"). The Judgment waived Phillips' right to a trial, admitted that his actions violated the CFA and a federal regulation, and required him to pay restitution, attorney fees, and civil penalties. The Judgment also precluded its use in most other proceedings:

> With the exceptions of paragraphs 12 and 13 above and the State's enforcement of this Consent Judgment, this Consent Judgment is not and shall not in any event be used as an admission or evidence of any alleged wrongdoing or liability by defendant Brent Randall Phillips, defendant Phillips Law Center, and defendant Farmer's Law Group in any other civil, criminal, or administrative court, administrative agency or other tribunal anywhere in the United States of America.

**¶4** Paragraphs 12 and 13 concern the state's rights to enforce the Judgment during a bankruptcy proceeding or subsequent civil litigation. The parties stipulated that the Judgment was the result of a compromise and settlement agreement and that only the parties could seek its enforcement.

**¶5** During attorney disciplinary proceedings before the PDJ, Phillips' counsel moved in limine to preclude the State Bar from introducing the Judgment into evidence for any purpose. The State Bar opposed the motion, arguing it should be allowed to use the Judgment to impeach Phillips' testimony if it differed from the facts contained in the Judgment. The PDJ ruled in favor of the State Bar, allowing it to introduce the Judgment's stipulated facts (but not the sanctions) for impeachment purposes.

**¶6** In his order, the PDJ recognized that the Judgment's terms precluded its use "as an admission or evidence of any alleged wrongdoing or liability" by Phillips. The PDJ concluded, however, that Rule 408 does not render the stipulated facts inadmissible because the Judgment is being used for a different purpose than in the Attorney General's original "claim." Finally, the PDJ quoted Rule 613(b), emphasizing that extrinsic evidence of a witness's prior inconsistent statement is admissible "if justice so requires."

**¶7** We accepted special action jurisdiction because this case presents a legal issue of statewide importance that is likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶8** Attorney disciplinary proceedings "are neither civil nor criminal, but are sui generis," and the rules of evidence apply in such proceedings "as far as practicable." Ariz. R. Sup. Ct. 48(a), (c). We review de novo the interpretation of court rules. *State v. Fitzgerald*, 232 Ariz. 208, 210 ¶ 10 (2013). "We interpret court rules according to the principles of statutory construction." *State v. Aguilar*, 209 Ariz. 40, 47 ¶ 23 (2004). Under those principles, when a rule is unambiguous, "we apply it without further analysis." *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561 ¶ 10 (2017) (internal quotation marks omitted). If a rule is ambiguous the Court may consider

its "subject matter, legislative history, and purpose, as well as the effect of different interpretations, to derive its meaning." *Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, 417 ¶ 12 (2015) (internal quotation marks omitted).

## I.      Arizona Rule of Evidence 408

¶9          Rule 408(a) provides:

> **Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim.

¶10          By its terms, Rule 408(a)(1) indicates that consent judgments cannot be introduced to prove substantive facts to establish liability for a disputed claim. *See* Michael H. Graham, 3 *Handbook of Federal Evidence* § 408:1 (8th ed. 2017) ("Pursuant to Rule 408(a)(1) neither the furnishing, promising, or offering, or accepting, promising to accept a valuable consideration in compromising or attempting to compromise the claim, nor the completed compromise itself is admissible to prove or disprove the validity or amount of a disputed claim."). Subsection (a)(1) renders inadmissible "[e]vidence of . . . accepting . . . a valuable consideration in compromising . . . the claim." Ariz. R. Evid. 408(a)(1). The Judgment reflects evidence of an exchange of "valuable consideration" between the state and Phillips. Phillips waived his right to a trial, admitted violating the CFA and a federal regulation, and agreed to pay restitution, fees, and penalties in exchange for mitigating liability and settling the state's action.

¶11          The dissent contends that if the drafters of Rule 408 intended the rule to cover consent judgments and settlement agreements in addition to their preceding offers and negotiations, they would have said so explicitly. ¶ 31, *infra*. But this view ignores the "general terms" canon of statutory construction. That canon "is based on the reality that it is possible and useful to formulate categories (e.g., 'dangerous weapons') without knowing all the items that may fit—or may later, once invented, come to

fit—within those categories." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012). The purpose of using general terms "is to produce general coverage—not to leave room for courts to recognize ad hoc exceptions." *Id.* Here, the drafters of Rule 408 used general terms—"evidence" and "valuable consideration"—to encompass the wide range of provisions that parties may offer and accept to reach settlements. By excluding consent judgments and settlement agreements from the general language of Rule 408, the dissent would find an ad hoc exception to the rule in violation of the general terms canon. And to what end? The practice of finding such exceptions in the context of Rule 408 would produce great uncertainty in the rule's application and undermine its policy of promoting settlement and compromise.

**¶12** The dissent also claims that the rule's heading, "Compromise Offers and Negotiations," limits its application to evidence of offers and negotiations. ¶ 31, *infra*. Yet titles and headings "are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen v. Balt. & O.R. Co.*, 331 U.S. 519, 528–29 (1947); *see also State ex rel. Romley v. Hauser*, 209 Ariz. 539, 542–43 ¶ 16 (2005) (declining to find a statute's title persuasive when it was inconsistent with the text of the statute); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221–22 (2012) (stating that although titles and headings "are useful navigational aids," "a title or heading should never be allowed to override the plain words of a text"). As discussed above, Rule 408(a)(1) expressly renders inadmissible evidence of "*accepting*" an offer to compromise a claim. The rule would not distinguish between evidence of "compromising" and "attempting to compromise" a claim unless it was intended to apply to completed settlements like the Judgment.

**¶13** Even if Rule 408 were ambiguous, which it is not, secondary methods of interpretation and caselaw interpreting Federal Rule 408 further support our interpretation of the Arizona rule. When we interpret an evidentiary rule that largely mirrors a Federal Rule of Evidence, we look to the federal rule and its interpretation by federal courts for guidance. *State v. Salazar-Mercado*, 234 Ariz. 590, 592–93 ¶ 7 (2014); *State v. Green*, 200 Ariz. 496, 498 ¶ 10 (2001). We also "subscribe to the principle that uniformity in interpretation of our rules and the federal rules is highly desirable." *Orme Sch. v. Reeves*, 166 Ariz. 301, 304 (1990).

**¶14** Arizona modeled Rule 408 after its federal counterpart. *See* Ariz. R. Evid. 408 cmt. to 2012 amendment ("[T]he language of Rule 408 has been amended to conform to the federal restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules."). The only difference between the state and federal versions of Rule 408 is that Arizona's rule does not include the "criminal use exception" set forth in Federal Rule 408(a)(2). *Id.* We therefore look to Federal Rule 408 and its interpretation by federal courts to aid our interpretation of the Arizona rule.

**¶15** According to the federal Advisory Committee on Rules of Evidence, the purpose of Rule 408 is to encourage "the compromise and settlement of disputes." Fed. R. Evid. 408 advisory committee's note to 1972 proposed rules; *see also Miller v. Kelly*, 212 Ariz. 283, 287 ¶ 12 (App. 2006) (citing Fed. R. Evid. 408 advisory committee note). The policy underlying the rule operates to render evidence of a completed compromise inadmissible against all parties to that compromise. Fed. R. Evid. 408 advisory committee's note to 1972 proposed rules ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto."); *see also Miller*, 212 Ariz. at 287 ¶ 12 (same); *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 536 ¶ 13 n.3 (App. 2004) ("[E]vidence of a settlement agreement otherwise precluded by Rule 408 may be offered for a purpose other than to prove or disprove liability or the validity of a claim . . . ."). With the policy of Rule 408 in mind, we turn to the admissibility of consent judgments under the rule.

**¶16** Since the rule's adoption in 1975, federal courts consistently have held that Rule 408 bars the admission of consent judgments to prove substantive facts to establish liability for a claim. *See, e.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981); *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 796 (E.D. Ohio 2015); *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 16 F. Supp. 2d 460, 473 (D. N.J. 1998). This is not to say that the rule bars admission of consent judgments for all purposes. For example, in *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992), the Fourth Circuit held that a consent judgment was admissible to prove motive or intent under Federal Rule of Evidence 404(b). *Id.* at 1413. Importantly, the court noted that admission of the consent judgment did not violate Rule 408 because it "was

not admitted to prove the truth of the matters on which compromise had been reached." *Id.*

¶17 Likewise, in *United States v. Austin*, 54 F.3d 394 (7th Cir. 1995), the Seventh Circuit held that the district court did not err in admitting a consent decree to prove the defendant was on notice that his conduct was wrongful because, although Rule 408 "prohibits the admission of statements made in the course of settlement to prove liability," it allows the admission of a consent decree "when offered for another purpose." *Id.* at 400. According to the court, the consent decree "constituted a direct judicial admission to the accusation of fraud in the conduct underlying the indictment." *Id.* Courts interpreting *Austin* have focused on the fact that the consent decree in that case was not offered to prove liability, *see, e.g.*, *N.J. Tpk. Auth.*, 16 F. Supp. 2d at 473, and it likely would have been admitted under the since-enacted "criminal use exception" to Federal Rule of Evidence 408 (which Arizona has not adopted) because it was "offered in a criminal case," and it was the product of settlement negotiations with the FTC, *see* Fed. R. Evid. 408(a)(2). *Cf. Gilbert*, 668 F.2d at 97 (holding that a consent decree is admissible under Rule 404(b) to prove knowledge of "reporting requirements involved in the decree," but it may not be used "to prove liability for the claim").

¶18 We agree with the foregoing cases interpreting Rule 408 as applying to consent judgments and hold that the rule precludes the use of a consent judgment's substantive facts to establish liability for a subsequent claim. Our holding not only comports with the plain text of Rule 408(a)(1), but also promotes uniformity in the interpretation of the Federal and Arizona Rules of Evidence, *see Reeves*, 166 Ariz. at 304, and advances the public policy underlying Rule 408. The State Bar's position that consent judgments are admissible to prove substantive facts would undermine Rule 408's purpose by discouraging compromise and settlement. The knowledge that a consent judgment with a governmental agency could be used to prove wrongdoing in a subsequent administrative or disciplinary proceeding would almost certainly dissuade defendants from settling disputes. Rather than agree to a set of stipulated facts in a consent judgment and risk certain prejudice in later proceedings when those facts are used as an admission of liability, many defendants would opt to contest their cases instead of settling. By discouraging compromise and settlement, the State Bar's interpretation of Rule 408 contravenes the rule's purpose.

**¶19** Here, the State Bar seeks to use the Judgment's stipulated facts to impeach Phillips' testimony in disciplinary proceedings. Rule 408 forbids this practice. Rule 408(a) expressly prohibits the use of such evidence "to impeach by a prior inconsistent statement or a contradiction." As the Advisory Committee explained in the context of the federal rule, "broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements." Fed. R. Evid. 408 advisory committee's note to 2006 amendment. In fact, the State Bar acknowledged as much when it filed a petition with this Court in 2008 to amend Rule 408. It argued then that allowing the introduction of settlement-related communications into evidence for impeachment purposes "dilutes Rule 408's substantive protections" and "diminishes Rule 408's value in encouraging settlement discussions."

**¶20** Moreover, the State Bar does not contend that it seeks to admit the stipulated facts of the Judgment for a purpose other than proving liability. Indeed, it seeks to use the stipulated facts to establish that Phillips' advertisements violated the Arizona Rules of Professional Conduct. This is the type of use that every federal court addressing the issue has, to our knowledge, deemed violative of Rule 408. The PDJ erred in finding the stipulated facts of the Judgment admissible to impeach Phillips' testimony.

**¶21** Citing *Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir. 1997), the State Bar argues that Rule 408 should not apply here because Phillips engaged in "inappropriate conduct" during settlement negotiations with the state by making false statements in the consent judgment. This argument is unpersuasive. *Uforma* held that Rule 408 does not apply "when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, *unfair labor practice*, and the like." *Id.* at 1293 (citations omitted). Here, the State Bar's claim is not based on Phillips' conduct during settlement negotiations with the Arizona Attorney General, but rather on the advertisements he sent to consumers in violation of Arizona law. *Uforma* is inapposite.

**¶22** The State Bar also contends that Rule 408 does not apply here because its disciplinary proceedings do not involve the "same claim" as the Attorney General's lawsuit, citing *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183 (10th Cir. 1992). We disagree. *Broadcort* held that Federal Rule of Evidence 408 did not bar the introduction of evidence

related to settlement discussions involving "a different claim than the one at issue in the current trial." *Id.* at 1194. There, the evidence at issue was testimony regarding settlement negotiations of a different claim associated with a prior loan transaction. *Id.*

**¶23** Although *Broadcort* did not define "same claim," the phrase has been defined in the claim preclusion context. We have previously observed that most federal courts, including the United States Supreme Court, have applied the transactional analysis of the Restatement (Second) of Judgments when the definition of a "claim" is legally significant. *In re the Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source*, 212 Ariz. 64, 71 ¶¶ 20–21 (2006); *see also Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1306–07 (S.D. Ala. 2005) (discussing how the "same transaction" test is consistent with the "same claim" requirement of Rule 408). Under the transactional analysis, the focus is on whether multiple claims arise out of a "common nucleus of operative facts." *Gila River*, 212 Ariz. at 71 ¶¶ 20–21 (internal quotation marks omitted).

**¶24** In this case, applying the transactional analysis leads us to conclude that the two proceedings at issue involve the same claim. Unlike the evidence in *Broadcort*, which concerned an entirely different loan transaction, the State Bar's claims here arose from the same set of operative facts underlying the CFA litigation. Specifically, both the Attorney General's lawsuit and the State Bar's disciplinary proceedings were brought to sanction Phillips for the advertisements he distributed. Although the sanctions Phillips may face from the State Bar differ from those in the civil proceeding the Attorney General brought, a difference in sanctions alone does not render a claim "different" for purposes of the transactional analysis. *See id.* ¶¶ 19–21. We therefore find that none of the exceptions to Rule 408 allow the State Bar to admit the Judgment or its contents into evidence.

**¶25** The State Bar also urges the Court to hold, for public policy reasons, that Rule 408 is inapplicable pursuant to Arizona Supreme Court Rule 48(c), which provides that the rules of evidence are applicable in attorney disciplinary proceedings "as far as practicable." Phillips, the State Bar argues, should not be allowed to use Rule 408 as a "safe haven" to give conflicting or contradictory statements regarding his advertisements. We decline the State Bar's request because it misapprehends the scope and purpose of Rule 48(c). The rule is merely a procedural streamlining

provision that does not curtail the substantive application of the rules of evidence. *Cf. In re Wilson*, 76 Ariz. 49, 53 (1953) (construing Section 20, Rule 1(C) of the Rules of the Supreme Court, the precursor to Rule 48(c), to provide "for a hearing that comports with the concept of due process yet leaving those charged with conducting the investigation free of the rigid rules governing proceedings in court. This is the meaning of the limitation on the use of the rules of evidence 'as far as practicable'"). Accordingly, we decline to apply Rule 48(c) to allow admission of the Judgment in Phillips' disciplinary proceedings in a manner inconsistent with Rule 408.

## II.    Arizona Rule of Evidence 613

**¶26**        The State Bar next contends that the Judgment is admissible under Rule 613(b). It is not. Rule 613(b) provides, in relevant part, "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."

**¶27**        In *State v. Acree*, 121 Ariz. 94 (1978), we held that prior inconsistent statements, "*unless inadmissible under some other rule*, become substantive evidence usable for all purposes." *Id.* at 97 (emphasis added). Here, as discussed above, the Judgment is inadmissible under Rule 408. Consequently, it is not admissible as substantive evidence under Rule 613(b). The State Bar's arguments under Rule 613 are unavailing.

**¶28**        The PDJ's order implied that the stipulated facts from the Judgment are nevertheless admissible under Rule 613(b) because "justice so requires." We disagree. There is nothing unjust about requiring the State Bar to prove its case—as it generally must do in attorney disciplinary proceedings—against Phillips without the stipulated facts from the Judgment. To the extent the PDJ's order invokes Rule 613(b)'s "justice so requires" language to prevent Phillips from admitting facts in a civil proceeding to mitigate liability and then denying them in a subsequent disciplinary proceeding, Rule 408 does not permit it. Rule 408's text expressly precludes the use of the Judgment to impeach Phillips and the policy underlying the rule balances the risk of such an outcome in favor of encouraging the compromise and settlement of disputes.

## CONCLUSION

**¶29** We accept jurisdiction of this special action and grant relief by vacating the PDJ's order denying Phillips' motion in limine. The PDJ is instructed to not permit use of the Judgment in the disciplinary proceedings.

BOLICK, J., dissenting.

¶30 When the Court finds it necessary to resort to federal cases, advisory comments to a federal rule, and multiple restatements to figure out what a rule of our own making means, something is seriously wrong.

¶31 I cannot join my colleagues in finding that Rule 408 encompasses consent decrees and settlement agreements. The rule is titled "Compromise Offers and Negotiations," and the provisions that follow encompass that limited subject matter and no other. A rule intended to apply to consent decrees would use that or a similar term, not the cumbersome verbiage cited by the majority. *Supra* ¶ 9–10 (finding "consent decree" in the language of Rule 408(a)(1) ("furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim")). Moreover, the rule's prohibitions are limited to "the claim," and do not by their terms extend to its "nucleus" or to other lawsuits. *See supra* ¶ 23. "When the language is plain, we have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision." *United States v. Temple*, 105 U.S. 97, 99 (1881); *see also Sw. Iron & Steel Indus., Inc. v. State*, 123 Ariz. 78, 79–80 (1979) ("[T]he expression of one or more items of a class and the exclusion of other items of the same class implies the legislative intent to exclude those items not so included."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it.").

¶32 I acknowledge, as my colleagues ably demonstrate, that for purposes of policy or expediency, multiple authorities have interpreted the federal counterpart to Rule 408 to encompass consent decrees even though no such language appears in the federal rule either. *See, e.g.*, *supra* ¶ 15 ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto." (quoting Fed. R. Evid. 408 advisory committee's note to 1972 proposed rules)). That a path is well-trod does not mean it should be followed. The categorical rule adopted by the Court today—that Rule 408 "precludes the use of a consent judgment to prove substantive facts" in any legal setting involving a claim with a "common nucleus" (*supra* ¶¶ 18, 23)—is momentous and raises significant policy questions that we cannot adequately consider in fact-bound

litigation. The outcome here may very well be correct, given that this case involves one state actor using another's consent decree to prove facts in a separate legal action when the decree contains language prohibiting such use. But the consequences of rewriting Rule 408 will extend far beyond the facts and parties before us.

¶33 There is a far better approach. Unlike statutes and constitutional provisions, whose policies we are oath-bound to enforce, the Court is authorized by Arizona Constitution article 6, section 5(5) to make procedural rules. Toward that end, this Court established a Standing Committee on the Rules of Evidence, charged with "consider[ing] future amendment of the rules based on changes to the Federal Rules of Evidence or evolving case law." *In re Establishment of the Advisory Comm. on Rules of Evidence*, Admin. Order No. 2012-43 (2012). Case law has evolved the meaning of Rule 408 but the rule's language remains unchanged. In our rulemaking proceedings we consider a wide array of perspectives that allow us to carefully weigh the full ramifications of our policy choices. It is a very simple yet deliberative process and far preferable to case-by-case rule revisions. Best of all, it can produce rules whose meaning is readily apparent on their face.

¶34 Access to justice requires clarity in our procedural rules. We should unfailingly hold ourselves to the standard of rules that say what they mean and mean what they say. Construing Rule 408 to encompass consent decrees flunks that standard. Not only does the rule's language fail to provide notice of the new and expanded scope given to it by the Court today, an attorney or layperson consulting the index to the Rules of Evidence for provisions pertaining to consent decrees or settlement agreements would (unsurprisingly) find no reference to Rule 408. When one cannot rely on a rule's words to determine their meaning, but instead must read our decisions to figure out how we have changed the meaning without having changed the rules themselves, we have failed a core part of our mission. *See Allen v. Sanders*, 240 Ariz. 569, 573–75 ¶¶ 22–30 (2016) (Bolick, J., concurring).

¶35 For the foregoing reasons, and with great respect to my colleagues, I dissent.